## REESE *vs.* BECK, Executor, &c.

1. It is no objection to a deposition taken on interrogatories, that in stating the name of the case in the commission, the plaintiff is represented as suing individually, instead of as executor; the commission, in such case, may be amended by the interrogatories.

2. The deposition of a witness may be taken, on the affidavit of the attorney of the party wishing it that the witness is unable to attend court because of sickness and great bodily infirmity.

3. Where notice of the taking of a deposition on interrogatories is addressed to the attorneys at law, by their firm name (without stating that they are attorneys at law), by whom the declaration was filed, it will be presumed, in the absence of any denial on their part, to have been addressed to them in the same character in which they filed the declaration; and if the notice is executed by the sheriff on a person bearing the same name with one of the partners of the firm, it will be presumed that the sheriff did his duty, and that the person on whom the notice was served was a partner of the firm.

4. When a deposition is taken in strict conformity to the statute, in every particular, except that the commissioner neglects to attach his seal to his certificate, an objection to its regularity comes too late at the trial.

5. Where the vendee is allowed until the end of the year to determine whether a conditional sale shall become absolute, he may make his election at any time before the expiration of the year, and is not confined to the last day of the year only.

6. A charge, when asked by either party, or affirmatively given by the court, should be so framed as not to exclude from the consideration of the jury any portion of the evidence which might exert an influence over their verdict.

Error to the Circuit Court of Talladega.

Tried before the Hon. Robert Dougherty.

Detinue for a slave, by Thomas K. Beck, as executor of Ephraim Pharr, deceased, against James T. Reese. The plaintiff proved a purchase of the slave by his testator, in 1845, at a sale by the trustee in a deed of trust executed by one Bushrod W. Bell; also, the defendant's possession at the commencement of the suit, a demand and refusal, and the value of the slave and his hire.

The defendant then offered in evidence the deposition of one Isaac M. Thomas, taken on interrogatories, which the court, on motion of the plaintiff, suppressed for supposed irregularities; but as these irregularities are particularly noticed in the opinion,

it is not necessary to repeat them here. The defendant derived title under a purchase by his wife, then Mrs. Bell, from said Ephraim Pharr ; but the evidence was conflicting as to the terms of this contract. The evidence in relation to it, so far as material to an understanding of the case, is stated in the opinion. The first charge of the court was not excepted to. The second charge, in effect, was as follows : If the jury believed that the contract between Pharr and Mrs. Bell was, that she should keep the boy during the year 1846, and at the end of that year might elect to keep him on paying $700, or to return him and pay $100 for his hire; and that she expressed her willingness to plaintiff, some time in November of that year, to take the boy at $700, and plaintiff then repudiated the contract; yet this would not dispense with the necessity of making a tender of the $700 at the end of the year 1846 ; and if the tender was not made, then plaintiff was entitled to recover. To this charge the defendant excepted, and asked the court to charge, that if the jury believed the contract to have been as stated in the last charge, then Mrs. Bell had the right to make her election at any time during the year 1846 ; and if she did make her election at any time before the expiration of the year, and offered to pay the $700, then they must find for the defendant. The court refused this charge, and the defendant excepted.

The rulings of the court in suppressing the deposition of Thomas, in the second charge given, and in the refusal to charge as requested, are now assigned for error.

WHITE & PARSONS, and J. J. WOODWARD, for plaintiff in error :

1. The affidavit, by an attorney, made upon information and belief, is sufficient.—Brahan v. Debrill, 1 S. 14. A deposition must be certified under the signature of the commissioner, but the certificate must be under his seal.—Dozier v. Joyce, 8 Porter 303 ; Hill v. Gayle, 1 Ala. 275. The omission to describe the defendant, Beck, as executor, was not sufficient ground for suppressing the deposition.—Jordan v. Hazzard, 10 Ala. 221 ; and see, also, Evans v. Norris, 1 Ala. 511. The notice is good.--1 Ala. 632 ; 11 Ala. 732 ; see Acts 1849–50, p. 73, §§ 6, 1.

2. The first principle, in the construction of contracts, is,

to carry out, if possible, the intention of the parties, not in a literal, but in a just and reasonable sense. On the construction of this contract, and its legal effect, see Barker v. Jones, 8 New Hampshire, 413 ; McLeod v. Powe & Smith, 12 Ala. 9 ; Lamb v. Lathrop, 13 Wendell 95 ; Sewall v. Henry, 9 Ala. 24. See also Chitty on Contracts, p. 11, *et seq.* to p. 14. Mrs. Bell was excused from an offer to perform by the act of Beck repudiating the contract.—Chitty on Contracts 689. And a party may subject himself to liability before the time of performance arrives.— Chitty on Contracts 731, 742 ; 20 Pick. 111 ; 25 *ib.* 455 ; 5 Ohio 514.

The case in 7 Barb. does not apply. It is founded on a statute which does not warrant the court in saying what is a substantial compliance with the provisions of it. The court say, it must be strictly construed. That is directly contrary to the intention of the Legislature in passing ours. This and the other cases cited by defendant's counsel in support of the decision of the court below, suppressing the deposition of Isaac M. Thomas, do not apply.

The law does not require a party to do a useless act : therefore, when Mrs. Bell offered to take the boy, and comply with the contract, and Beck refused it, and said she should not have the slave, it was unnecessary for her to make the tender in form at the end of the year.

RICE & MORGAN, *contra* :

1. Under the third section of the act of 12th February, 1850 (Pamphlet Acts of 1849–50, p. 75), it is essential that the commissioner shall, under his hand and seal, below the testimony, or on some convenient place in the papers, certify to the clerk of the proper court, or to the justice, that the evidence of the witness was taken down under oath, and subscribed by him, in his presence, at a time and place appointed by him," &c, &c. This act repealed all former acts contravening its provisions, and designedly provides the mode of procedure under commissions to take testimony. If the mode thus prescribed is not substantially pursued, the deposition must be suppressed on motion ; for no court in this State can dispense with any requisition of a statute. If the " seal" of a commissioner can be dispensed with, any other part of the certificate can be dis-

pensed with; and upon such reasoning, the certificate itself can
be dispensed with. Depositions are in derogation of the common
law, and owe their origin and authority to statutes. The
statute must be observed; no excuse can supply the non-observ-
ance of the statute.—Caldwell v. Mayor, &c., 9 Paige's Rep.
572; Fleming v. Hollenback, 7 Barb. Sup. C. Rep. 274;
Shed v. Leslie, 22 Vermont 498; Whitney v. Sears, 16 ib.
591; Sanford v. Octalomi, 23 Ala.

The correctness of this position is rendered the more certain,
by a reference to the statutes in relation to depositions which
were of force prior to the act of 1850, and the construction put
upon those statutes by the Supreme Court.—Dozier v. Joyce,
8 Porter 303; Hill v. Gayle & Bower, 1 Ala. 275. In this
case last cited (1 Ala. 275), the court assign the reason why
the "seal" of the commissioner was not essential under the
laws then of force, as follows. "Neither of our statutes pre-
scribing the manner in which depositions are to be taken,
requires that the commissioners should attest the genuineness
of the examination by certificate under their hand and seals."
Ten years after this decision had been made, the Legislature
passed the act of 1850, and did thereby expressly require the
seal of the commissioner "below the testimony, or on some con-
venient place in the paper." This legislation annuls the former
law, and the decisions thereon founded.

There are other grounds which justified the suppression of the
deposition of Thomas; for instance, the pretended notice is a
mere nullity. It is not a notice. It is not addressed or directed
to either of the parties to this suit, nor to the attorneys of
either of the parties, but " to Messrs. Rice & Morgan," not as
attorneys of any party, but simply to " Rice & Morgan."
This pretended notice was not served on Rice and Morgan,
but on " John T. Morgan, Esq." The pretended notice
aserts that " the above int'ries are on file in the " proper office,"
and that a commission will issue according to law."—Rex
v. Croke, 1 Cowper's Rep. 26, 30; Shehan v. Hampton, 8
Ala. 942. The commission does not appear to have been issued
in this case, but in a case " wherein Thomas K. Beck is plain-
tiff, and James T. Reese is defendant." There is a material
difference between Beck and Beck " executor of the last will
and testament of Ephraim Pharr, deceased, who sues as such

executor."—Chapman, Governor &c., v. Spence *et al.*, 22 Ala. There was no proof offered that Beck, in his individual right, did not have a suit against Reese in the same court.

The commission derives its efficacy from the law. By law, all the power conferred on the commissioner named in the commission, ceases on the return day of the commission. After the return day, he ceases to be commissioner, and cannot add a seal or do any other act as commissioner.—Herndon v. Givens, 16 Ala. 261 ; Ulmer v. Austill, 9 Porter 157. After the return day of the commission, and after the commission and the acts of the commissioner under it have been actually returned to and filed in the court to which it was returnable, the court has no power to re-commit the commission or any thing done under it to the commissioner. And if it were to do so, its action would be void, and every thing done under such re-commitment would be void.—Snell v. Bangor Navigation Co., 30 Maine 337 ; Wentworth v. Keazer, 20 *ib.* 336.

A contract between E. Pharr and Mrs. Bell, " that she was to keep the boy (a slave) during the year 1846, and at the end of that year had her choice to keep the negro on paying $700, or to return him and pay $100 for the hire," does not divest Pharr of his title to the negro; nor will such agreement, in connexion with the expression by Mrs. Bell in November, 1846, to Pharr's executor, of " her willingness to take the boy at $700," operate a divestiture of title to the negro out of Pharr or his executor; especially if there is no payment of the $700, and no tender of it, and no expression of readiness or ability to pay it, and no offer to pay it, but merely an expression of " her willingness to take the boy at $700."—Eskridge v. Glover, 5 Stew. & Por. 264, and cases there cited ; Cook v. Oxley, 3 T. R. 654 ; Grant v. King, 14 Vermont 367 ; Buckmaster v. Smith, 22 *ib.* 203 ; Smith v. Foster, 18 *ib.* 182 ; Bigelow v. Huntley, 8 *ib.* 151 ; Falls v. Gaither, 9 Porter 605 ; Chitty on Contracts (edition of 1851), 344, note 1.

The utmost effect which can legally be assigned to such an agreement is, that it constituted a bailment or hiring of the slave to Mrs. Bell for the year 1846, at the price of $100, with the privilege to her, " at the end of the year" (the expiration of the term of hiring), of relieving herself from returning the slave and paying the hire, " on paying $700."—Grant v.

King, 14 Vermont 369. Or, it is "an agreement to sell the property on condition of receiving payment within a stipulated time.—George v. Stubbs, 26 Maine 247. Such an agreement is not a sale. She was not bound by it to pay for the slave. She was not a purchaser, but had the mere option to become a purchaser "at the end of that year." "While the agreement continued the option to her, the law gave it to Pharr or his representative.—Eskridge v. Glover, 5 Stew. & Por. 274, 275. "The important but nice distinction is," that this contract was not a sale of the slave "with only a reservation of the right to one to renounce it; but the agreement was, that it should become a sale, if, at the end of that year," Mrs. Bell should choose to buy the slave and "pay $700" for him.—Eskridge v. Glover, 5 S. & P. 275, *supra*; 9 Porter 605; George v. Stubbs, 26 Maine 247. This was not a conditional sale, since it was to be optional with Mrs. Bell, "at the end" of the year 1846, whether any sale should take place.—Grant v. King, 14 Vermont 370. In these respects, as well as in others, this case is distinguishable from the case of McLeod v. Powe & Smith, 12 Ala. 9, so much relied on by plaintiff in error.

Without designating all the differences between the case last cited and this, it may not be improper to notice, that in that case there was a valid agreement in writing that Gordon should become the purchaser of Smith's slaves at the marshal's sale; that Gordon did purchase the slaves under the agreement; that it was also agreed, that on the payment of $4,832 by Smith to Gordon, on the 1st January, 1844, the said slaves should revest in Smith; that, "on the 26th December, 1843, with a view to carry out said contract," said sum of $4,832 was duly tendered. This was a conditional sale—a sale to Smith on condition that he paid the $4,832 by the 1st January, 1844. The judgment in the action of *detinue* concerning said slaves, was never brought to the Supreme Court, but remained of force when McLeod v. Powe & Smith was tried, and was part of the evidence in that case. In the present case, no tender has ever been made, and there is no sale, conditional or otherwise.

The actual delivery of goods does not, of itself, transfer an actual ownership in them; to perfect the title of the vendee, there must be a consummation of the contract of sale. The fact that Mrs. Bell had the slave, does not prove that the title

was changed by the delivery to her. It is plain, the title was not thereby changed.—Marston v. Baldwin, 17 Mass. 606, 611. The expression by Mrs. Bell " of her willingness to take the boy at $700," made to the executor of Pharr, in November, 1846, is not, and was not, a tender of $700. No money was produced. There was no offer to pay any money. A tender of $700, is a very different thing from an expression by Mrs. Bell of her willingness to take the boy at $700.—9 Porter 615 ; 14 Viner's Abr. 19 § 4 ; Flower's Case, which shows that a mere offer will not change the title. If the executor " repudiated the contract" in November, 1846, that did not relieve Mrs. Bell from tendering the $700. Whether she made any tender was referred to the jury by the second charge; and in finding for the executor under the second charge, the jury found she made no tender. That finding ought to settle that question of fact, at least in the appellate court.

But the charge, as given, is justified upon another clear ground : "Where the estate is to arise upon a condition precedent (as, " on paying $700"), it cannot vest till that condition is performed ; and this has been so strongly adhered to, that even where the condition had become impossible, no estate or interest grew thereupon."—Vanboone v. Dorrance, 2 Dallas 317 ; 2 Bacon's Abr. 292 ; Edwards v. Lewis, 18 Ala. 495. The payment of the $700 was a condition precedent, in this case, and was never performed.—Falls v. Gaither, 9 Porter 617. The agreement between Pharr and Mrs. Bell, operated as a mere license to Mrs. Bell to buy at the end of the year on paying $700. Such license was revoked by Pharr's death, or, at all events, by the executor.

The charge asked was properly refused.—See authorities above cited. There is one objection fatal to the charge asked. If it had been given as asked, and without any explanation, and the jury believed the state of facts on which it was based, the jury would have been bound thereby to " find for defendant," although the jury might have believed there had been " a rescission of the contract"—of which rescisssion there was evidence. Inasmuch as there was evidence tending to prove a rescission of the contract, and inasmuch as such rescission (if it existed) was fatal to the defendant below, any charge asked by him might well be refused, which excluded the question of the

rescission of the contract from the consideration of the jury, and authorized the jury to "find for defendant," although they might believe there had been a rescission: If the charge as asked had been given; an explanation thereof would have been necessary, and such an explanation as would have amounted to a remodeling of that charge.—Ross v. Ross, 20 Ala. 105 ; 19 Ala. 322:

LIGON, J.—The errors assigned in this case relate, 1st, to the rejection of the deposition of the witness Thomas ; and, 2nd, to the charges given and refused by the court.

1. In relation to the deposition of Thomas, the plaintiff moved its suppression on the trial, for supposed irregularities in the *dedimus*, in the notice to the plaintiff, the affidavit to procure its issue, and the certificate of the commissioner who took it.

The first objection is founded on the manner in which the parties to the suit are stated in the *dedimus*. The style of the case is there set out, as " Thomas K. Beck plaintiff, and James T. Reese defendant ;" when the writ and declaration are in the name of Thomas K. Beck, as executor of Ephraim Pharr, deceased. We are inclined to think this objection entirely too technical to be allowed to prevail in any case, as the commission may be amended by the other parts of the record, which clearly show in what character the plaintiff sues.—Jordan v. Hazzard, 10 Ala. 221 ; Evans v. Norris, 1 Ala. 511. In the case under consideration, the commission issued on interrogatories filed in the office of the clerk, which are required to accompany it. To these we may well look, in order to supply any omission of the clerk in stating the style of the case in the *dedimus*, as well as to the affidavit on which it issues. In both the interrogatories and the affidavit accompanying this commission, the style of the case is set out as it is in the writ and declaration.

The objection to the affidavit cannot be sustained. It is made by the attorney for the defendant, sets out that the testimony of the witness is material to the defendant, and that the affiant has been informed and believes that the witness is unable to attend court because of sickness and great bodily infirmity. The reason why the *deposition* of the witness is sought, is one of the grounds on which it is allowable to take the depo-

sition of a resident witness. The bodily infirmity of the witness need not, as it is supposed, be referable only to his *age*, before the law will excuse his personal attendance, and authorize his deposition to be taken. His inability to attend court arising from bodily infirmity, superinduced from any cause, is sufficient. The deposition is only *de bene esse*, at best, and may be excluded, if, at the time of the trial, it is made to appear to the court, that the witness has been relieved, and is able to give his personal attendance.—Sess. Acts 1849–'50, p. 73, § 1.

The fact that the affidavit is made by the attorney, and not the party himself, does not vitiate it.—Brahan v. Debrill, 1 Stew. 14; Sess. Acts 1849–'50, §§ 1–6, p. 73.

The objection taken to the notice of filing the interrogatories, and suing out the commission, is equally unavailing. It appears at the foot of the interrogatories, in the margin of which the style of the case is correctly stated, and is addressed to Messrs. Rice & Morgan. It is objected that it does not style these gentlemen attorneys for the plaintiff, and that it appears to have been served by the sheriff on John T. Morgan, Esq. Unless notice is denied to have been received by the party entitled to it, the court will not look into the manner or form in which it was given.—Milton v. Rowland, 11 Ala. 732. We think, however, that this record shows affirmatively that notice in writing was given to the plaintiff's attorneys. It is true, they are not styled attorneys at law, in the notice itself; but upon reference to the declaration we perceive it is filed by Rice & Morgan, to whom, by their firm name, this notice is addressed, and the court will presume, in the absence of any denial on their part, that it was addressed to them in the same character in which they filed the declaration in this case. For the same reason, that is, a failure to deny the fact by the plaintiff or his attorneys, we will presume that the sheriff did his duty, and that the John T. Morgan named in his return, is the partner of the firm of Rice & Morgan. Had this been denied in the court below, the sheriff might have been allowed to amend his return, and thus remove all ambiguity, for it amounts to nothing more. The last reason given against the propriety of allowing this deposition to be read, is predicated on the third section of the act of 1849–50, Sess. Acts p. 73-4, which prescribes how depositions under that act shall be taken, and among other

things directs, that "the commissioner shall, under his hand and seal, below the testimony, or on some convenient place in the papers, certify to the clerk of the proper court, or to the justice, that the evidence of the witness was taken down under oath, and subscribed by him in his presence, at a time and place appointed by him," &c.

The deposition which the court below suppressed in this case, is taken with strict regard to every requirement of this statute, except in respect to the seal of the commissioner. No objection lies to the competency of the witness, or the relevancy of the evidence. The defect complained of is a mere irregularity of the form in which the relevant evidence, of a competent witness, is attested by the commissioner who took it under lawful authority. In other words, it is a defect of *form*; but this form is required by the statute, and the certificate is incomplete without it. If the objection had been taken at the proper time, it might probably have been allowed to prevail. But under the more recent decisions of this court, it is now well settled, that objections made to a deposition for irregularities in taking it, come too late when made for the first time at the hearing or trial of the cause.—Jourdan v. Jourdan, 17 Ala. 466; Colgin v. Redman, 20 Ala. 650.

For these reasons, we think, the court below erred in suppressing the deposition of the witness Thomas.

2. The next assignment of error is predicated upon the second affirmative charge of the court, which is in these words: "If they (the jury) believe from the evidence, that the contract between Ephraim Pharr and Mrs. Bell was, that she was to keep the boy during the year 1846, and at the end of that year had her choice to keep the negro on paying $700, or to return him and pay $100 for his hire; and that sometime in the month of November of that year she expressed her willingness to the plaintiff to take the boy at $700, and the plaintiff repudiated the contract, yet this did not dispense with the necessity of Mrs. Bell's making a tender at the end of the year 1846; and if the tender was not made, then the plaintiff was not entitled to recover."

This charge cannot be supported. The evidence tends strongly to show, that the contract between Pharr and Mrs. Bell amounted to a conditional sale of the slave in controversy

by the former to the latter, by which the latter was allowed until the end of the year 1846 to determine whether it should become absolute. The testimony also conduced to show, that in November, 1846, (Pharr having died in the meantime, and the plaintiff having become his executor,) Mrs. Bell made her election, and announced to the plaintiff her determination to retain the slave, and treat the contract as a sale, and not as a bailment by way of hire, at the same time offering to perform her part of the contract of sale; but the plaintiff repudiated the contract of his testator. From this moment the title to the slave vested absolutely in Mrs. Bell; and if it had died between that period and the 1st day of January, 1847, there can be no question that the loss would have fallen on her, and the death of the slave would have formed no defence in an action against her by the present plaintiff, in his representative capacity, for the purchase money.—McLeod v. Powe & Smith, 12 Ala. 9. This charge is essentially erroneous, in confining Mrs. Bell's right of election to the last of the year 1846. She had the right to determine whether she would treat the contract as a sale, at any time after it was made, and before the end of the year. If she did make her election in November, the sale was complete, and the end of the year had nothing more to do with the contract, except to fix the time when the purchase money should fall due. Under this charge, the jury were prohibited from looking to, and passing upon, the testimony of Mrs. McMeans and other witnesses, who had testified in relation to the conversation and conduct of Mrs. Bell and the plaintiff in November, 1846, and of saying whether what occurred at that time amounted to an election by the latter to treat the contract as a sale, and an offer on her part to perform its stipulations, from which she was hindered by the defendant, who repudiated the contract altogether. The charge confines the right of Mrs. Bell to perform the terms of the agreement on her part *to a single day,* when we think she might have made her election, and paid or tendered the purchase money, on the last day of the year, or at any time subsequent to the date of the agreement and the last day of the year. In the case of McLeod v. Powe & Smith, *supra,* the agreement between the parties, as it is recited by the court, was, that the money should be paid on the 1st day of January, 1844, and the only proof of tender

was on the 26th day of December, 1843 ; yet this was held to be sufficient to vest the title of the slaves in the vendee, and left the vendor only his right of action for the purchase money. So, in the present case, if the testimony is sufficient to show an offer by Mrs. Bell to pay the purchase money, in November, and a refusal by Beck to receive it, it would have been all that could be required to be done to vest the title of the slave in her, without the necessity of again offering to make the payment on the last day of the year. This part of the case, with proper directions as to what would amount to a tender on the part of the vendee, and what acts of the plaintiff would amount to a waiver of the necessity of a formal tender, should have been submitted to the jury. The vice of the charge under examination, is, that this was not only not done, but the jury were virtually instructed that this proof had nothing to do with the point in issue between the parties. We express no opinion as to the conclusiveness of the proof in relation to the tender of the money, or the offer to perform her part of the contract by Mrs. Bell, in the month of November, 1846 ; that is a matter for the jury. We only decide that she had the right, under the contract, to make the tender at that time, and if it was made and refused, she was not bound to renew it on the last day of the year.

3. The charge asked by the defendant, was correctly refused by the court. All charges must be given with reference to the proof in the case, and when asked by either party, or affirmatively given by the court, should be so framed as not to exclude from the consideration of the jury any portion of the evidence which might exert an influence over their verdict. There is some evidence in this record in relation to a rescission of the contract between Pharr and Mrs. Bell. The testimony on this point is said to have been conflicting. The charge asked demands a verdict for the defendant, without reference to the fact as to whether the contract had or had not been rescinded by the parties. The court was not bound to qualify it, and without this qualification it was correctly refused.

For the errors heretofore pointed out, the judgment must be reversed, and the cause remanded.