## Waring & Son *v.* Grady's Executor.

*Action against Owners of Steamboat for Goods sold.*

1. *Custom, as part of partnership contract.* — A custom, or usage of trade, existing at the place where the business of a partnership is to be transacted, and relating to the particular business in which it is engaged, enters into and forms a part of the partnership articles, unless excluded by express stipulation.

2. *Custom among steamboat-men in Mobile, as to purchase of salt for sale or exchange on trips up the river.* — The custom proved in this case to exist among steamboat-men navigating the Alabama and Tombigbee rivers, as to buying salt in Mobile, when freights were dull, to be sold or exchanged on the trip up the river, and paid for on the return trip, held valid and binding as between two joint owners of a steamboat, rendering one liable for salt so purchased by the other for the use of the boat.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JOHN ELLIOTT.

This action was brought by the appellants, suing as partners, against P. A. Grady and Jno. J. Moulton, and was discontinued as to said Moulton, who was not served with process. The amended complaint, on which the trial was had, was in these words : " The plaintiffs claim of the defendants, as late joint owners and copartners of the steamboat *Black Diamond*, and as copartners in the freight of said boat, the sum of six hundred and sixty dollars, due for two hundred sacks of salt sold and delivered by said plaintiffs to said defendants, as late joint owners and copartners of said steamboat, and as copartners in the freight of said boat, on the 4th day of January, 1867, which said sum, with the interest thereon, is still due and unpaid." The defendant pleaded, 1st, the general issue; and, 2d, a special plea, which was sworn to, averring that he was not a partner with said Moulton in the said steamboat or her freight ; and issue was joined on both of these pleas.

" On the trial," as the bill of exceptions states, " the plaintiffs adduced before the jury evidence tending to show that they sold, and delivered on board the said steamboat *Black Diamond*, two hundred sacks of salt, at the request of said John J. Moulton ; and that said boat was at that time owned by said defendant and said Moulton jointly, each owning a one half interest ; and that said boat was employed and used by them to run from Mobile, navigating the Alabama and Tombigbee rivers for freights and passengers, the said owners sharing the profits and dividing the losses, as steamboats on those

rivers usually do in that business. The plaintiffs further introduced and examined three witnesses, who were old steamboatmen, and one a merchant, who testified that they were well acquainted with the trade of the navigation of steamboats on the waters of the Alabama and Tombigbee rivers, and had been for thirty years or more; and that it was the common practice in that trade, when the ordinary freight was scarce, and therefore deemed advantageous to increase the freights of the boat, to purchase salt at Mobile, to be carried up the river and sold, or exchanged for wood or expenses; and that this usage of the trade was deemed good economy, and was recognized and known to all the steamboat-men, merchants, and others, and to owners engaged in said trade, and was considered within the scope of said business; and that this was also often done, when no regular freight was offering, to raise money to pay the expenses of the up trip, to be repaid out of the profits of the down trip; and that it was, and is now, the every-day practice for owners and masters in charge of steamboats, to make such purchase on account of the boat and owners, for the benefit of the vessel, and to increase or make up profits. This evidence was not contradicted by any witness. The plaintiffs also gave in evidence the entry on their books at the time of the sale of said salt, showing that it was charged to the account of said steamboat and owners, and not to said Moulton individually. According to the understanding between said Moulton and plaintiffs, the salt was to be paid for on the return trip of the boat; but it never was paid for. There was evidence by defendant Grady, and other witnesses for the defence, tending to show that he had no knowledge of the purchase of the salt, and did not assent to it, and that the salt was sold for said Moulton's benefit.

" Upon the foregoing evidence, the court charged the jury, that if they believed the defendant knew of the purchase of the salt, or authorized its purchase by Moulton,. or assented to it in any way, he would be liable for the price; that the evidence of the usage, as shown by the witnesses, would not of itself, in point of law, be sufficient to authorize said Moulton to make the purchase on joint account; and that though the management of the boat's business was left entirely with Moulton, and Grady was jointly interested with him in the earnings and losses of the boat, notwithstanding any such usage, the knowledge and consent of Grady was necessary to bind him for such purchase. The plaintiffs excepted to this charge, and requested the court, in writing, to instruct the jury as follows: 'If the jury believe, from the evidence, that it is usual, in the steamboat trade on these waters, to purchase salt at Mobile, on credit, to carry up on the boats when freights are not full, for

[Waring *v.* Grady's Executor.]

sale and exchange; and that this is the common practice of boats, and well known in the trade to steamboat-men and others, and considered by them a proper economy in the trade, to increase the profits of the boats, and within the usual scope of the business of steamboating; then such a purchase, if not made on individual account, but for the use of the vessel, by the managing partner or "ship's husband," will bind the owner.' The court refused to give this charge, and the plaintiffs excepted."

The charge given, and the refusal to charge as requested, are now assigned as error.

BOYLES & OVERALL and GEO. N. STEWART, for appellants.

D. C. ANDERSON, contra.

PETERS, C. J.— A partnership is created by agreement of the parties who constitute it, and it may be entered into with reference to a custom or usage of the place where its business is to be transacted. If this custom is a legal one, and such as the law will enforce, it may modify the legal effect of the partnership agreement; and such a custom may be shown, in connection with the contract, to establish the intention of the parties in entering into it, for such a custom becomes a part of the contract itself, and explains its stipulations. *Sampson & Lindsay* v. *Gazzum*, 6 Porter, 123; *Mills* v. *United States Bank*, 11 Wheaton, 431; *Cutler* v. *Powell*, 6 Term, 320. This doctrine, applied to this case, very clearly shows that the charge asked by the plaintiffs below ought to have been given to the jury. This charge was not abstract, but was fully supported by the evidence, which was wholly uncontradicted. It was asked in writing, and it contains a fair statement of a legal proposition, applicable to the issues submitted to the jury. The court erred in refusing to give it.

The charge given by the court was also incorrect, and was calculated to mislead the jury. It had the effect to withdraw from their consideration all that part of the evidence which tended to establish the custom or usage, which modified the legal effect of the partnership agreement, in reference to the purchase of the salt. Such a charge cannot be sustained. 29 Ala. 188; 24 Ala. 651; 23 Ala. 17; 22 Ala. 501, 796. If the obligations of the partnership were modified by the usage attempted to be proven, of which the jury must judge, then the contract of partnership permitted the salt to be purchased. What this contract permitted was within the scope of the business in which the firm was engaged; and, within this scope or limit, the act of one partner is the act of all, and binds all.

[Bibb *v.* Hitchcock.]

3 Kent, 40, 41; 1 Parsons on Contracts, 174–5, and cases there cited. If a partner wishes to protect himself against such a usage, the partnership agreement should be so framed as to do this, or he should give notice of dissent. 27 Ala. 245.

The judgment of the court below is reversed, and the cause is remanded for a new trial.