# Shackelford *v.* Williams.

## *Assumpsit.*

(Decided May 1, 1913.   62 South. 54.)

1. *Partnership; Liability to Third Persons; Evidence.*—In an action by a dealer for the price of supplies furnished on a credit, the evidence examined and held sufficient to sustain a finding that a partnership existed between another and the defendant for prospecting on coal lands under a lease, and that defendant was, therefore, liable for the debts contracted by his partner for that purpose.

2. *Same; Restrictions on Authority.*—Where it was agreed between two partners that the expenses of prospecting certain coal land should be defrayed solely out of a fund deposited in a bank for that purpose, and no liability incurred beyond that amount, such agreement, though binding between the partners, did not relieve a partner from liability to a dealer who had furnished supplies to the other partner upon credit, relying on the fact of partnership, since the apparent and not the real agreement controls as to third persons.

3. *Same; Holding Out as Partner; Evidence.*—The evidence examined and held sufficient to show that the parties held themselves out to the public as partners, so as to make both liable as such, even though there was no partnership agreement between them.

4. *Same; Subject Matter.*—A partnership may exist as to a particular transaction only, and in that case, the rights and liabilities of the parties are limited to that one transaction.

5. *Same; Authority to Bind Partnership; Scope.*—Partners have mutual authority to bind each other by contracts relative to the

partnership business, if within the scope of the business, and without fraud on the part of the other party to the contract.

6. *Same; Scope of Business; Common Usage.*—It is competent, to show the scope of business of a partnership, to introduce evidence of common, usual dealing of persons engaged in the same business in the same locality.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Assumpsit by Albert Williams against W. C. Shackelford. Judgment for plaintiff and defendant appeals. Affirmed.

CABANISS & BOWIE, for .appellant. A partnership cannot exist between partners unless such is their intention.—*Gulf C. S. Co. v. Boyles*, 129 Ala. 196. Hence, the court could not find that the evidence establishes a partnership inter se as between Treat and Shackelford. It is, therefore, respectfully insisted that Shackelford was not liable as a partner under the evidence by virtue of any dealing or agreement between Treat and himself, nor was he liable by virtue of having held himself out or allowing himself to be held out as a partner of Treat in the Treat Coal Co.

THOMPSON & THOMPSON, and CASSELL & HARRIS, for appellee. No brief reach the Reporter.

MAYFIELD, J.—The only question presented for decision or discussed in brief on this appeal is whether or not appellant is liable as a partner of one B. A. Treat, a third party to the suit. Neither Treat nor the alleged partnership, the Treat Coal Company, is sued.

This case was tried by the court without a jury, and resulted in a judgment for plaintiff (appellee here) in the sum of $2,144.50.

The sole assignment of error is the rendition of this judgment.

[Shackelford v. Williams.]

The undisputed facts were that plaintiff was a merchant, doing business at or near Harriman, Tenn.; that there had been undertaken certain prospect work upon coal land, near Harriman, known as the Old Emory Gap mine; that this work was being done by parties operating under the name of the Treat Coal Company, and was conducted and managed by B. A. Treat; and that the plaintiff, as such merchant, sold goods to said alleged partnership or firm, and cashed orders issued by such firm to its employees, under an agreement with B. A. Treat, by which the firm was to have a discount or rebate of 10 per cent. on the amount of such dealings.

It is likewise undisputed that defendant (appellant here) was interested in the prospecting of such coal lands, and was co-operating with Treat in the matter; that prior to this time the two had been frequently interested in prospecting certain coal lands in Alabama; that they together had acquired coal lands in Alabama, and jointly formed or promoted a corporation which developed such lands, and mined and marketed the coal therefrom; and that they had jointly undertaken to prospect, purchase, and develop the lands in Tennessee, known as the Old Emory Gap mine. They agreed, in effect, that if the lands proved satisfactory they were to either lease or purchase the same, and then promote a corporation which was to operate the mining business. This corporation was to acquire the lease or the lands, depending upon whether the joint efforts of the promoters resulted in a lease or a purchase of the lands in question.

The appellant denies, however, that he agreed to lease the lands, but states that he agreed that in the event the prospecting proved satisfactory they would purchase, and then promote a corporation to purchase the

lands and operate the business of mining and marketing the coal therefrom.

The project was never consummated; but the debt in question was incurred, and the prospecting work, which was a condition precedent to the lease or purchase of the coal lands, was undertaken and prosecuted for some time.

It is admitted that it was agreed between Treat and appellant that a lease of these lands should be obtained, for the purpose of prospecting the same, with an option to purchase, if the lessees desired, after this prospecting, and that if the purchase was desired and made Shackelford, the appellant, would finance the proposition by advancing the money necessary to purchase the lands and organize the corporation. This lease for prospecting purposes was made, and the debt sued for was incurred in promoting this prospecting, though it is claimed by appellant that it was without his knowledge or consent.

Appellant contends that it was agreed between him and Treat that this prospecting work could and should be done on an expenditure of $2,000, and that they provided this fund with which to defray the costs and expenses of the prospecting work, and that the money for this purpose was placed in the bank for this purpose, and that Treat had no authority to get credit for other expenses.

It is undisputed that this business was carried on under the name of the Treat Coal Company, and that Treat and appellant were the only persons interested in the alleged partnership or firm, and that the business was conducted and carried on by B. A. Treat under this firm name. There was no written agreement of partnership, nor express agreement that Treat and Shackelford should share in the profit or loss of the under-

taking; but all the evidence, disputed and undisputed, shows a condition and status of affairs, and a relation between these two parties, as to this particular undertaking, from which the jury or the court trying the facts might infer the existence of a partnership, and consequently a liability on the part of the defendant to pay this debt due the plaintiff from the alleged partnership.

One of the main and strongest reasons urged by the defendant why he should not be held liable for this debt is that it was expressly agreed by and between him and Treat that the expenses of the prospecting should be defrayed exclusively out of the fund placed in the bank for that purpose, and that no credit liability should be incurred. If this fact should be found to exist, as between the parties it would be binding; but it would not be binding upon third parties, who had dealt with the partnership, or with its members, as such, and who had relied upon the fact of partnership and acted accordingly. In other words, what is necessary to constitute a partnership inter sese is not the same as that necessary to constitute a partnership as related to other persons; and the extent of the power of a partner to bind another partner, in a dispute arising between them, is not the legal measure of that power in controversies between them and third parties. In the first instance, the real and actual agreement controls; in the latter, the ostensible or apparent agreement may control, though it be not the actual. To illustrate by applying these general rules to the undisputed facts of this case: The defendant admits, in substance, the facts which we have stated as being undisputed; but he adds, as his version of the matter, as follows: "There was no agreement at all between Col. Treat and myself in regard to taking hold of the property, except that if these people

would make this purchase contract we would take the property and prospect it, and see whether we wanted to open a mine there. That was the only agreement between us, and there was nothing else involved in the agreement between us. There was nothing said about the profits of the business, because we had not got to that point; it was a trading proposition entirely at that time, and there was nothing said about any losses. After the contract was signed in regard to this property, we agreed that on $2,000 we could do the prospect work in a few months, just to find out whether we wanted the property or not, and it was distinctly understood between us when the prospect operations begun that there would be no liabilities created whatever; that was our agreement; that the money provided at first would pay all bills. In coal operations you have got to buy a few supplies, and to pay the men monthly; but these were to be paid for, and there was no authority for him to get credit, as we had placed the money in the bank to take care of all of those matters."

This statement, taken in connection with the other evidence, clearly made his liability a question for the jury or court trying the facts in this case, and it is quoted by appellant in his brief as showing that he was not liable. Of course, it has tendencies to that effect, and would support a verdict or judgment in his favor; but it is not conclusive.

Mr. Treat testified, in part, as follows: "We agreed that I was to superintend the business, and both of us were to furnish the money. Mr. Shackelford said—I do not know whether he said it at the time or not—but he said that he could put up his money in the future, and the agreement was that we were to share the profits, share and share alike. I do not know whether the word profits' was really brought out; I cannot recollect that

that word was used. We were to share, share and share alike, in the undertaking, and both of us were to put in the same amount of money, and we expected that the development of the property would result in the formation of a corporation."

The plaintiff, among other things, testified: "The first time that I ever met the defendant here was in June, 1909, in front of my store. Col. Treat was with him, and they drove up in front of my store, and Col. Treat called me out and introduced me to Mr. Shackleford as his partner, and said, 'Mr. Williams is going to handle our orders,' and Mr. Shackleford remarked that it was an accommodation to them, and hoped that I would be benefited by it; that was on the first meeting I had with him. An arrangement was made between me and the defendant and Col. Treat, whereby I was to be allowed a discount on orders."

All this was corroborated by other evidence tending to show defendant's liability for this debt. It is true the defendant denied having been introduced to the plaintiff by Mr. Treat as the latter's partner and for the purpose mentioned by plaintiff; but the plaintiff is substantially corroborated in this, and in much of his other evidence, by Mr. Treat. The undisputed evidence shows that the defendant did defray a part of the expense of the enterprise, as the plaintiff and Treat say he agreed to do; and the proof fails to sufficiently show that the plaintiff ever had any notice or knowledge of the defendant's withdrawal from the business until after he had extended the credit and parted with his goods and money.

It is very true that the agreement between the parties itself should control as to whether or not there is a partnership, and whether or not the parties are liable as such; and the rule is so well expressed by Judge

Story, in his work on Partnership, that it has been adopted by the English courts as a correct exposition of the doctrine. It is stated: "The true rule ex æquo et bono would seem to be that the agreement and intention of the parties themselves should govern in all cases, if they intended a partnership in the capital stock or in the profits, or in both; then that the same rule should apply in favor of third persons, even if the agreement were unknown to them; and, on the other hand, if no such partnership were intended between the parties, then that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons."—Page 74. See 19 Eng. Rul. Cas. 346.

In this case, however, the evidence tends to show, if it does not conclusively show, that the parties so held themselves to the public.

To emphasize and state strongly the true rule as to the exceptions in such cases, Lord Cranworth said, 'in the English case which quoted Judge Story as stating the true rule: "The liability of one partner for the acts of another was in truth the liability of a principal for the acts of his agent. Partners might stipulate among themselves that some one of them only should enter into particular contracts, or make any other special arrangements, but with such arrangements third persons had no concern, but had a right to assume that every partner had authority from his copartners, whether avowed or secret partners, to bind the whole firm according to the originary usages of trade."—Id. pp. 347, 348.

The law is again most clearly and simply expressed by Judge Story, on this subject, as follows, his statement thereof being accepted by the English House of

Lords as a proper exposition of it. "Every partner is an agent of the partnership, and his rights, powers, duties, and obligations are in many respects governed by the same rules and principles as those of an agent; a partner virtually embraces the character of both a principal and agent."—Partnership, § 1.   See 19 Eng. Rul. Cas. p. 370. ·

A partnership may exist as to a particular transaction or adventure, such as is shown in this case, and in such case both the rights and the liabilities of partners will subsist as to that matter, and not otherwise. Partners not only have a joint interest in the business, but they have mutual authority to bind each other by contracts with third parties, relative to the partnership business, if made within the line and scope of the authority and without fraud on the part of such third parties.

The following American authorities are, we think, conclusive of the question involved on this appeal, as applied to the evidence shown by this record:

"Every partner is, * * * in contemplation of law, the general and accredited agent of the partnership; or, as it is sometimes expressed, each partner is præpositus negotiis societatis, and may consequently bind all the other partners by his acts in all matters which are within the scope of the partnership."—Story on Agency (9th Ed.) § 124.

"The acting partners are identified with the company, and have power to conduct its usual business in the usual way.   This power is conferred by entering into the partnership, and is perhaps never to be found in the articles.—Marshall, C. J., in *Winship v. Bank of the United States,* 5 Pet. 529, 562 (8 L. Ed. 216).

The authority of a partner, to quote the language of Matthews, J., in *Irwin v. Williar,* 110 U. S. 499, 505,

[Shackelford v. Williams.]

506, 4 Sup. Ct. 160, 164 (28 L. Ed. 225), "may be implied from the nature of the business according to the usual and ordinary course in which it is carried on by those engaged in it in the locality which is its seat, or as reasonably necessary or fit for its successful prosecution. If it cannot be found in that, it may still be inferred from the actual, though exceptional, course and conduct of the business of the partnership itself, as personally carried on, with the knowledge, actual or presumed, of the partner sought to be charged. * * * What the nature of that business in each case is, what is necessary and proper to its successful prosecution, what is involved in the usual and ordinary course of its management by those engaged in it, at the place and time where it is carried on, are all questions of fact to be decided by the jury from a consideration of all the circumstances which, singly or in combination, affect its character or determine its peculiarities, and from them all, giving to each its due weight, it is its province to ascertain and say whether the transaction in question is one which those dealing with the firm had reason to believe was authorized by all its members."

To show the scope of the business of a partnership, evidence of the common, usual dealings of persons engaged in the same business in the same locality is competent.—*Waring v. Grady,* 49 Ala. 465, 20 Am. Rep. 286; *Smith v. Collins,* 115 Mass. 388.

Finding no error, the judgment of the lower court is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.