[Snow v. Schomacker Manufacturing Co.]

# Snow *v.* The Schomacker Manufacturing Company.

### *Assumpsit for Goods Sold and Delivered.*

| 69 | 111 |
| 100 | 506 |
| 69 | 111 |
| 106 | 380 |
| 69 | 111 |
| 115 | 379 |
| 69 | 111 |
| 139 | 368 |

1. *Construction of contract determined by place of performance.*—The ·construction of a contract of sale of personal property, made and performed in another State, must be determined, as to its obligations and the rights of the parties thereunder, by the law of such State.

2. *Common law presumed to prevail in Pennsylvania.*—Pennsylvania having a common origin with this State, in the absence of proof to the contrary, the common law is presumed to prevail therein.

3. *Sale by manufacturer of manufactured articles; implied warranty.* Where a manufacturer sells an article of his own make or manufacture, the law, in the absence of an express warranty, implies one on the part of the seller, that such article is reasonably fit for the purpose to which it is to be applied.

4. *Same.*—Where a manufacturer sells a piano, with knowledge that the purchaser is a dealer in pianos and is purchasing to re-sell or let to rent, there is, in the absence of an express agreement to the contrary, an implied warranty, that the material and workmanship are good, that the instrument is adapted to the uses for which it was made and sold, and that it is a reasonably good musical instrument, taking into the estimate its class or style and price; and if by reason of defective materials, workmanship or structure, it falls below this standard, there is a breach ·of the warranty.

5. *Contract of sale; when advertisement a part of.*—Where a manufacturer offers by letter to sell pianos of his own manufacture to a party at a distance, stating the terms of the sale, and directing attention to a circular advertising the pianos, sent by the same mail, on the front page of which is printed in a conspicuous manner the words, "Every piano warranted for five years;" these words are thereby incorporated into the offer contained in the letter, and, on acceptance of the offer and a purchase thereunder, after the receipt of the circular, they constitute a part of the contract of purchase.

6. *Sale of chattels; express warranty construed.*—The words, "Every piano warranted for five years," contained in a contract of sale of pianos by the manufacturer, constitute a warranty, that each piano sold has no inherent defect, either of materials or workmanship, which will cause it to break or give way within five years after the sale; but they do not warrant the style or grade of the instrument.

7. *Breach of warranty in sale of personal property; when not waived; when damages thereunder available under plea of set-off; measure of damages.*—At different times during the years 1875 and 1876, a party residing in this State purchased from a manufacturer in Philadelphia several pianos for the purpose of re-selling or letting them to rent, with warranty that each piano had no inherent defect, either of materials or workmanship, which would cause it to break or give way within five years. In the latter part of 1876, the iron plate of one of the pianos cracked, thereby injuring its value and saleableness; and thereupon the purchaser called on the manufacturer to repair the instrument, or to substitute a new and sound one in its place. This, in the spring of 1877,

[Snow v. Schomacker Manufacturing Co.]

after some correspondence, the manufacturer refused to do. In the latter part of 1877, the purchaser in person purchased of the manufacturer two additional pianos on credit, and agreed to give his acceptances therefor. At the time of this purchase nothing was said by the purchaser of his claim for damages on account of the cracked or broken plate. Afterwards, the purchaser refused to give his acceptances because the manufacturer had failed to repair or make good the crack or break in the plate of the piano about which the correspondence was had, and also because the plate of another of the pianos first purchased had broken or cracked. In a suit brought by the manufacturer for the price of the two pianos last purchased, the purchaser sought to set off against the plaintiff's demand the damages sustained by him in the breaking of the plates of said pianos,—*held*,

(*a*). That if such breaks occurred from inherent defects in the material or workmanship of the pianos, this was a breach of the warranty in the sale of the instruments, and legal damages resulting therefrom could be made available under the plea of set-off against the plaintiff's demand for the price of the two pianos last purchased.

(*b*). That the measure of damages in such case is the actual proximate injury sustained, including such expense as was reasonably necessary to repair the instruments and to put them in the condition they would have been in, if there had been no break; the expense of new iron plates, and of putting them in and adjusting the other parts to them, and the expense of transportation to and from the factory, if shipment thereto be necessary to obtain such repairs. But it does not include such items of accidental or extraordinary expense as cartage to and from sub-purchasers, and the temporary use of other pianos in their place.

(*c*). That the failure on the part of the purchaser to renew his demand for indemnity against the damages which he had sustained from the breaking of the first piano when he made the last purchase, can not, as matter of law, amount to a waiver of the warranty or of the damages resulting from a breach thereof.

(*d*). That his conduct was, at most, a circumstance to be weighed by the jury in connection with the other evidence, in determining whether he had abandoned his claim for damages, by failing to mention it.

8. *Errors committed on trial; when not healed.*—The mere fact that an issue is found in the record, which, under the evidence, might have been the basis of a general charge in favor of the appellant, if it had been requested, does not heal errors which the court committed in charging the jury on other issues.

APPEAL from Mobile Circuit Court.

Tried before Hon. H. T. TOULMIN.

This suit was brought by the Schomacker Manufacturing Company, a corporation existing under the laws of the State of Pennsylvania, and having its principal place of business in the city of Philadelphia, against Joel H. Snow, for the purpose of recovering the price of two pianos manufactured by the plaintiff and by it sold to the defendant. The pleadings and facts are sufficiently stated in the opinion. On the trial, the Circuit Court, at the request of the plaintiff, gave to the jury the following charges in writing, to-wit: 1. "In order to establish a warranty by custom or usage the custom or usage must be general and uniform; both as to the fact of warranty and the terms and meaning as understood by both seller and buyer, and also as to the manner of making such warranty; and if such custom

be not general and uniform in these respects, no warranty can be thereby established to bind the plaintiff; and it makes no difference that some other manufacturers have a usage of their own in respect to sale of pianos by them." 2. "To establish a warranty by custom or usage, the said custom must be uniform as well as general, and the contract, to constitute a warranty, must be intentionally entered into by both parties, that such custom is to constitute a warranty." 3. "If the jury believe from the evidence that a controversy arose between the plaintiff and the defendant as to what each should do in the case of a cracked plate, and the plaintiff denied the claim made by the defendant, and the defendant therafter purchased two other pianos without having any further discussion or understanding as to any agreement concerning such accidents, then as to the last purchase of said pianos, the defendant as to like claims was bound by the previous construction put upon it by the plaintiff." 4. "If the jury believe from the evidence that defendant Snow bought the pianos which were sold in November, 1877, the purchase-money of which is sued for in this case, with a knowledge that plaintiff had repudiated the defendant's construction of his liability under the preceding contract of purchase, then the defendant can not hold him under such construction, so far as those pianos are concerned, irrespective of the customs of trade attempted to be shown in evidence by the defendant." To the giving of these charges the defendant separately excepted. The jury returned a verdict in favor of the plaintiff, and judgment was rendered thereon against the defendant; and from this judgment he appeals.

OVERALL & BESTOR, for appellant.

GAYLORD B. & FRANK B. CLARK, contra.

STONE, J.—In February, 1875, the plaintiff below, appellee here, instituted and commenced the correspondence, which led to the sales of pianos by the Schomacker Manufacturing Company to Snow. Those sales and their stipulations furnish the entire subject of this controversy. All the testimony shows that the sale and delivery of the pianos, about which there is contention, were made and perfected in the State of Pennsylvania. It follows that, as to the obligations of the contract, express and implied, the construction must be determined by the law of the place where the contract was made.—Whar. Confl. of Laws, § 401, g; Sto. Confl. of Laws, § 76; 1 Brick. Dig. 352, §§ 20, 22, 24, 27.

What are the laws of Pennsylvania, governing the questions presented in this record, was not proved in the court below.

8

We are not permitted to look beyond the record, for information on this subject.—*Drake v. Glover*, 30 Ala. 382. But Pennsylvania being one of the States having a common origin with our own, in the absence of proof to the contrary, we presume the common law prevails there.—1 Brick. Dig. 349, § 9.

The present suit was brought to recover the agreed price of two pianos, sold and delivered in Pennsylvania in 1877. The plaintiff proved the sale and delivery, and the agreed price, and then closed. The articles sold were manufactured by the plaintiff, and were sold to the defendant, with a knowledge on the part of the plaintiff, that defendant was a dealer in pianos, and was purchasing to resell, or let to rent. As their name imports, they were manufactured and sold as musical instruments. When a manufacturer contracts to sell an article of his own make or manufacture, and there is no express agreement as to warranty, the law implies a warranty on the part of the seller that it shall be reasonably fit for the purpose to which it is to be applied.—Benj. on Sales, 3d Amer. Ed., § 657 ; 2 Ross Lead. Cases, m. p. 358 ; *Jones v. Bright*, 3 M. & P. 155 ; *Pacific Guano Co. v. Mullen*, 66 Ala. 582. This implies that the material and workmanship shall be good, and that the instrument shall be reasonably adapted to the uses for which it is made and sold ; that it shall be a reasonably good musical instrument, taking into the estimate the class or style, and the price for which it is sold. If, by reason of defective material, workmanship or structure, it falls below this standard, there is a breach of this implied warranty.

The defendant pleaded recoupment and set-off, and claims that in addition to the implied warranty referred to above, there was an express warranty of the pianos he purchased, to continue and be in force for five years. The testimony tends to show the following state of facts : Under date February 16th, 1875, the president of plaintiff wrote to defendant and another, his former partner, stating that "at present our instruments are not represented in your section," and inviting him to become a purchaser of plaintiff's pianos. The letter offered generous terms, spoke highly of the merits of the instruments, and in a postscript said : "We have mailed you our catalogue and price list, which we would like you to examine, and would particularly call your attention to style No. 6, which is a very leading instrument, and which we purpose to reduce to you on our schedule to $600, which will give you a 7⅓ oct. piano for $270 on the 30 days basis. We intend making a specialty of this style, and will run it extensively." The defendant answered this letter in his own name, under date, March 13th, 1875, and, among other things, informed plaintiff that he and his former partner had dissolved, by the withdrawal of the latter. He made an

[Snow v. Schomacker Manufacturing Co.]

offer in said letter, different from that made by plaintiff. Plaintiff replied March, 18th, declining defendant's offer, and urging defendant to accept his, plaintiff's. This was done; and on April 3d, 1875, plaintiff wrote defendant as follows: "Enclosed I hand you bill and bill lading of four pianos sent to you as per your order," etc. The bill of lading describes the pianos by their several numbers of octaves, by their style numbers, manufacturer's numbers, and by their several prices. In the bill of exceptions is an original advertisement or circular, containing many certificates of recommendation, and a price list, setting forth nineteen different styles of piano, with brief description, and price of each style, all in type, and prefaced with a cut or engraving of the manufacturer's building. The style numbers and prices on this price list correspond with the style numbers and prices on the bill sent to defendant. The defendant testified that this advertisement or circular and price list reached him by the same mail which brought him plaintiff's first letter, referred to above. The president of the company testified "that the catalogue and circular, introduced by Snow in evidence, were not mailed to Snow and Snow & Brown at the same time he wrote the first letter, and that defendant could not have received them until a long time afterwards, some eighteen months perhaps." So, there was conflict in the testimony as to whether Snow received this circular and price list, until after he had purchased several pianos, including those first ordered as above. On the first page of this circular, below the cut or engraving, are the following words in printed capitals: "EVERY PIANO WARRANTED FOR FIVE YEARS."

In the court below much testimony was offered, and some received, tending to show the usage and general custom with piano manufacturers, in regard to warranties in the sale of their merchandise. Much of this testimony, we think, related only to the habit of other manufacturers in their own dealings, rather than to a general usage or custom of trade. Most or all of this testimony, as we shall hereafter show, was either illegal, redundant, or immaterial. Strictly, there was no legitimate testimony offered, which tended to show that, in the absence of all express stipulations to that effect, there was a general custom or usage with piano manufacturers that they warranted all pianos sold by them of their own make. Their testimony is, that in their dealings, they give express written warranties, stating the number of the piano, the date of the sale, and the term of the warranty. Most of the testimony sought to be introduced to establish a general custom, was nothing more than what the witness thought the manufacturer should have done under the circumstances. Some of the witnesses undertook to testify to the meaning and import of the words relied on as constituting the

warranty in this case.    The president of the plaintiff corporation, in his testimony before the jury, stated "that the word ' warranted ' in the circulars and in the catalogues, merely meant warranted to be a piano."    According to this, the language should be read, "*Every piano warranted* [*to be a piano*] *for five years.*"    This, to say the least of it, is a strange use of language. But we need not pursue this inquiry further.

What is the proper construction of the words, " Every piano warranted for five years?"    We think no outside testimony is needed to show their import.    Language must be interpreted with reference to the subject about which it is employed.    Here the subject was a well known musical instrument, now universally called a *piano-forte*—having reference to the softness and fullness of its tones.    The excellence of such an instrument must depend on many things, and among them, chiefly, the goodness of the materials, and the skill and fidelity of the workmanship.    If the instrument be so constructed and adjusted as to respond readily to the touch, to give forth pleasing and properly graduated sounds through the range of its keys, and the frame-work be so adapted and put together as to retain the strings in tension, and the mechanism does not yield or break in any part of it, these are certainly points of excellence.    But these qualities depend much on the grade and costliness of the instrument.    We can not think the word " warranted," without more, is definite enough to cover and guaranty the style or grade of the instrument.    That must be determined by the purchaser. We think the true meaning is, that with reasonable and proper treatment and handling, it will not break or give way in five years.    In other words, that it has no inherent defect, either of materials or workmanship, which will cause it to break or give way within five years after the sale.    And by mechanical skill, we mean not merely that the parts shall be well fitted, and securely put and fastened together.    They must be properly adapted, adjusted and harmonized, to secure the proper effect. But, the present warranty reaches only breaks, or giving way, occurring within the five years.

It is contended, however, for appellee, that if we construe the words we are considering as a warranty, it is invalid under our statute of frauds, because it is not in writing, expressing the consideration, and signed by the party sought to be charged. It is a sufficient answer to this, that this contract was made in Pennsylvania, where we presume the common law prevails.    If there is any statute of that State requiring that contracts not to be performed within a year shall be in writing, signed, etc., it is neither pleaded nor proved in this case.    We will recur to this subject further on.

In stating the testimony above, we showed that Snow, the

appellant, and the president of the plaintiff corporation, flatly contradict each other as to the time when the circular and price list were sent to the former.   If appellant's version be believed, then the letter of the president of the corporation, accompanied with the circular containing the printed words of warranty, was an offer by the corporation to sell pianos to Snow, with a warranty, such as we have defined above.   And when Snow accepted the offer, and purchased the pianos, he received with them the corporation's warranty to that extent.   If the other version be the true one, and Snow made the purchase before seeing the circular, then Snow purchased without any warranty, save that implied in a sale by a manufacturer of goods manufactured by him.   The principle governing in such cases is stated above. This disputed question of fact is one for decision by the jury.

During the years 1875 and 1876, Snow purchased from the plaintiff corporation seven pianos.   Late in the year 1876, the iron-plate of one the four pianos first purchased cracked, thereby injuring the value and saleableness of the instrument.   Snow had previously sold the piano with warranty, and had taken it back and put a new one in the place of it.   He then called on the plaintiff to repair the instrument, or substitute a new and sound one in its place.   The plaintiff corporation offered, if Snow or his vendee would pay freight charges and expenses of transportation to and from its factory in Pennsylvania, it would either put a new plate in that piano and return it, or ship him a new and sound one in place of it.   This offer Snow and his vendee declined to accede to, and no other correspondence then took place in regard to it.   The close of this correspondence was in the spring of 1877, and there were then no unsettled matters between the parties, save the unacknowledged and unadjusted claim of Snow for the one broken piano.   Later in that year—about November, 1877—defendant in person purchased of the plaintiff at its salesroom in Philadelphia two additional pianos on six months' time, on an agreement to give his acceptance therefor.   At the time of this purchase Snow said nothing of his claim for damages on account of the cracked or broken frame.   When called on by letter for his acceptance, after the goods had been received by Snow, he refused to give it, urging as a reason the failure of the plaintiff to repair or make good the crack or break in the piano, mentioned above, and also claiming damages for a similar break or crack in another of the four pianos first purchased.   Thereupon this suit was brought for the price of the two pianos last purchased.   Before the trial was had, the defendant claimed, and offered testimony tending to prove, that one of the two pianos last purchased cracked or broke in the same manner as the above, and he claimed damages for that break.   So, according to Snow's claim and testi-

[Snow v. Schomacker Manufacturing Co.]

mony, the iron plates of three of the nine pianos he had purchased of plaintiff, had cracked in the same manner, and at the same place; the last break occurring in defendant's store, within a short time after he had received it. The defense was recoupment and set-off: recoupment, for the alleged imperfection and break in one of the instruments, for the price of which suit was brought; and set-off of the damage caused by the break of two of the instruments previously purchased. There can be no question that if the breaks occurred from inherent defects in the material or workmanship of the pianos, this was a breach alike of the implied and express warranty in the sale of these instruments, and the damage resulting therefrom could be made available under the plea of set-off, to the extent and subject to the rules after stated.—2 Brick. Dig. 425 §§ 41 to 47 inclusive.

It is contended for appellee, that inasmuch as Snow's claim of damages for the break of the plate which first occurred, was never admitted, but was denied and refused by plaintiff, and the correspondence in regard to such claim, instituted by Snow, had been allowed to stop, without having the claim adjusted or admitted; "and the defendant purchased two other pianos, without having any further discussion or understanding as to any agreement concerning such accidents, then as to the last purchase of said pianos the defendant as to like claims was bound by the previous construction put upon it by plaintiff." The Circuit Court so charged the jury at the request of the plaintiff, to which there was an exception by defendant. We need not inquire whether or not this charge would be correct, if, as it seems to suppose, there was no proof of express warranty, and the law implied none; in other words, if the case stood alone on proof of a general custom, or usage of trade in such cases. That is not this case. We have shown above that there was an implied warranty that the materials and workmanship were good, and that the instruments were reasonably well adapted to the uses and purposes for which they were manufactured and sold. And the express warranty, if found to have entered into the contract under the rules above, extended, or limited the liability, for the term of five years after the sale. There being both an implied and an express warranty, a failure on the part of Mr. Snow to renew the demand for indemnity, on the occasion when he made the last purchase, can not, as matter of law, amount to a waiver of that term of the contract. It may be that at that time, when only one plate had cracked, as the testimony tends to show, he was willing to waive that; but his conduct does not conclusively prove this. It is, at most, a circumstance, to be weighed by the jury in connection with the other evidence, in determining whether either party, by failing

[Snow v. Schomacker Manufacturing Co.] ·

to mention it, had abandoned the ground taken in their former correspondence, which correspondence had led to no result.

The pianos were sold with knowledge, and with intent, that they should be carried to Mobile, Alabama, and there re-sold, or let to rent. The question is made, what is the measure of damages, if there was a breach of the warranty, express or implied. The actual, proximate injury sustained from the breach, is the general rule of damages.—*Bolling v. Tate,* 65 Ala. 417. This will include such expense as was reasonably necessary to repair the instruments, or to put them in the condition they would have been in, if there had been no break. The expense of transportation to and from Pennsylvania, if such shipment was necessary to obtain the repairs, and the expense of a new iron plate, putting it in, and adjusting the other parts to it, are each and all natural and proximate results from the breach, and are the proper measure of recovery, if, according to the principles declared above, there has been a breach of the warranty. In other words, the expense of having the machine restored to its normal condition. Whether the plate could have been replaced away from the factory, was a question on which all the witnesses did not agree. It would be the duty of the purchaser, in such a case as this, to have the repairs made at as light expense as he reasonably could. The refusal of the manufacturer to pay the expense of transportation would possbly enhance the expense of having the repairs made. Whatever the expense would reasonably amount to, that is the proper criterion of damages. Our want of knowledge forbids us to assume that the instruments could, or could not have been repaired, outside of a factory, constructed for their manufacture, or to hazard an opinion as to the difference, if any, in the cost of repairs, when made by the manufacturer of the instrument, or by another manufacturer. This is a question for testimony. The real damage is the difference in value of the instrument, as it was, and where it was, and what it would have been, if sound. See *Converse v. Burrows,* 2. Min. 229. But this, at last, is but another mode of stating the expense of having the proper repairs made, including transportation, if necessary.

Some items of accidental, or extraordinary expense—such as cartage to and from the sub-purchaser, and the temporary use of another piano—were properly disallowed. They are too remote.—*Bolling v. Tate,* 65 Ala. 417; *Hargous v. Ablon,* 5 Hill (N. Y.), 472.

The charge given, which we have above pronounced incorrect, is numbered 3, of those asked by the plaintiff. Charge No. 4 of its asking is faulty for the same reason. Charges 1 and 2 given, and the charge asked by defendant, and refused—all relating to general custom, or usage of trade—do not put

[Snow v. Schomacker Manufacturing Co.]

the court in error; but they have nothing to do with this case.

It is claimed for appellee that all the foregoing questions are rendered unimportant, in consequence of the issue formed on the 2nd replication to defendant's pleas, which is in the following language: "That the said alleged agreement or contract of warranty was not in writing subscribed by the plaintiff, or any agent of plaintiff thereunto lawfully authorized in writing, and not by its terms to be performed within one year from the making thereof." There being no demurrer to this replication, if the evidence sustained its averments, a charge that if the jury found the averments to be true, they must disallow the set-off, if asked, should have been given; and if given, would have furnished no ground of reversal.—*Farrow v. Andrews & Co.,* ante p. 96; *Mudge v. Treat,* 57 Ala. 1. But this case did not go off on that question. In fact, the record fails to show that there was any ruling as to the sufficiency of that replication, or that the issue raised upon it entered into the trial before the jury. The fact that that issue is in the record, and might have been the basis of a charge on which the plaintiff could probably have recovered, does not heal errors the court did commit, in charging on another issue. We have shown above that in two of the charges given, the Circuit Court erred.

But there is another, if not a stronger reason, why we should not apply the rule invoked. The replication we are considering is based on the Alabama statute of frauds. The contract was made in Pennsylvania, and must be construed, and the rights under it determined, by the laws of that State. If they have a statute of frauds like ours, the record does not inform us of it. Browne's Stat. Frauds, appendix, 623. If there had been a finding on the issue tendered by the replication we are considering, it would have been a finding on an immaterial issue, and we can not know that the court would not, on motion, have awarded a repleader.

The Circuit Court having erred in the two charges given, it follows that its judgment must be reversed.

Exceptions were reserved to the exclusion of testimony; notably, the testimony offered of difference in value in Mobile, between the instrument sound, and the instrument broken. We think such testimony a legitimate source of information, as to the injury which resulted from the plaintiff's breach of warranty, if the jury find there was a breach. It was greater than if the breach had occurred, or should occur near the factory, by so much as the transportation would cost to and from a place where the repairs could be made. What we have said will furnish a sufficient guide for another trial.

Reversed and remanded.