· (97 South. 650)

### DOUGLAS & MIZELL v. HAM TURPENTINE CO. (4 Div. 69.)

(Supreme Court of Alabama. Oct. 11, 1923.)

1. **Customs and usages** ⬉15(2)—**Where contract of sale of turpentine is silent on size of cars to be furnished, evidence that by custom "tank car" meant car fully, not partially, loaded admissible.**

Where seller sold turpentine to buyer, buyer agreeing to furnish "tank cars" within 10 days after receipt of written request, and seller requested buyer to furnish a tank car when he had 90 barrels on hand, but buyer failed to do so, the contract not stating the size or capacity of tanks to be furnished seller, evidence that by usage and custom of the turpentine trade the expression "tank car" meant a shipment of tanks fully and not partially loaded, and that the minimum size car was of 120 barrels capacity, was admissible in an action for breach of contract; such proof in no manner varying or contradicting the terms of the written contract, but aiding in the interpretation of the language.

2. **Customs and usages** ⬉13—**Parties presumed to contract with reference to existing custom or usage pertaining to their pursuit.**

Where a custom or usage is proved to exist in relation to a particular trade or pursuit, and it is general, all persons engaged therein are presumed to contract with reference to it.

3. **Trial** ⬉60(1)—**Proof of existence of custom admissible, though no knowledge of one party to contract shown.**

Proof of existence of a usage or custom is admissible, even though there is no showing that one party to the contract had knowledge of such custom.

4. **Evidence** ⬉461(1)—**Evidence that seller knew of buyer's inability to furnish cars for less than minimum capacity admissible on meaning of contract.**

In an action for breach of contract for sale of turpentine, providing that the buyer should furnish tank cars within 10 days after receipt of request, if buyer failed to furnish a car

when seller requested one for 90 barrels, correspondence between the parties tending to show knowledge on the part of seller that buyer could furnish only cars of minimum capacity of 120 barrels was admissible in evidence, as shedding light on the meaning of the language of the contract.

Appeal from Circuit Court, Covington County; Leon McCord, Judge.

Action for breach of contract by the Ham Turpentine Company against Douglas & Mizell. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

The contract upon which the suit is based is as follows:

"This contract, made between Douglas & Mizell, as first party, and Ham Turpentine Company, as second party, witnesseth:

"Section 1. Second party sells to the first party their productions and receipts of naval stores, consisting of approximately 300 barrels turpentine and 1,000 barrels of rosin, at Elba, Ala., between July 1, 1920, and March 31, 1921, f. o. b. cars, as follows:

"Section 2. For turpentine in tank cars furnished by first party second party is to be paid eight cents (8¢) per gallon below the official closing market for turpentine in barrels (regulars) at Savannah, Ga., of date of bill of lading on tank car lots.

"Section 3. For rosins shipped per first party's instructions, second party is to be paid fifty cents (50¢) per two hundred eighty pounds (280 lbs.) below the official closing market for rosins in Savannah, Ga., of date of bill of lading. This contract is based on present freight rates.

"Section 4. This contract covers clean, well-strained rosins in regular rosin barrels, and pure spirits of turpentine, white and unadulterated, within the meaning of the Pure Food and Drugs Act of Congress of June 30, 1906. Second party is to inspect all tank cars before shipment, and will promptly pay all just reclamations. Second party is to weigh and grade all rosins before shipment, guarantee weights and grades, and will promptly pay all just claims. All rosins to be weighed under the Savannah Board of Trade rules.

"Section 5. If the Savannah Board of Trade market on date of any delivery hereunder be fictitious, nominal, nothing doing, or a holiday, the first official closing quotations thereafter shall be the price basis; actual trading being resumed.

"If the official closing quotations of the Savannah, Ga., Board of Trade on the date of inspection as to turpentine or on date of bill of lading, when full tank cars are loaded, or on date of B/L as to rosin, quote the market as being fictitious, quiet, nominal, nothing doing, dull, steady, or a holiday, then the first official closing quotations of said Savannah, Ga., Board of Trade thereafter, when actual trading has been resumed, are to form the price basis.

"Section 7. First party agrees to furnish tank cars within ten days after receipts of written request therefor. If tanks are not furnished or shipped within said ten days, the price basis is to be the Savannah market of the

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tenth day after receipt by first party of said written request.

"Section 9. Second party guarantees not to deliver any rosin or turpentine produced from trees growing on public lands.

"Section 10. First party agrees to receive all turpentine and rosins delivered by second party hereunder, and to pay cash therefor upon receipt of documents.

"Signed in duplicate this 26th day of June, 1920. Douglas & Mizell, C. W. Mizell, General Sales Manager. Ham Turpentine Co., P. J. Ham. Witness: Winnie Wright."

W. O. Mulkey, of Geneva, and E. O. Baldwin, of Andalusia, for appellants.

Where a custom exists in reference to a particular trade or business, contracts of parties engaged in the business are presumed to be made with reference to such custom, unless expressly excluded. Sampson v. Gazzam, 6 Port. (Ala.) 123, 30 Am. Dec. 578; Ezell v. Miller, 6 Port. (Ala.) 307; Mobile, etc., Co. v. McMillan, 27 Ala. 77; Waring v. Grady, 49 Ala. 465, 20 Am. Rep. 286. Custom and usage will be admitted to explain an ambiguous contract, or to illustrate a new and unusual word used therein. Hibler v. McCartney, 31 Ala. 501; McClure v. Cox, 32 Ala. 617, 70 Am. Dec. 552; Barlow v. Lambert, 28 Ala. 704, 65 Am. Dec. 374; E. T., V. & G. v. Johnston, 75 Ala. 604, 51 Am. Rep. 489; M. & C. v. Graham, 94 Ala. 545, 10 South. 283; Miller v. Stevens, 100 Mass. 518, 1 Am. Rep. 139, 97 Am. Dec. 123; 12 Cyc. 1081; W. T. Smith Lbr. Co. v. Jernigan, 185 Ala. 125, 64 South. 300, Ann. Cas. 1916C, 654. Letters passing between the parties in advance of the execution of the contract were admissible to show in what sense the parties themselves used the ambiguous terms. Chatta. Brewg. Co. v. Smith, 3 Ala. App. 551, 58 South. 63; Snow v. Shomacker Co., 69 Ala. 111, 44 Am. Rep. 509, 18 Ann. Cas. 257; Stoops v. Smith, 100 Mass. 63, 1 Am. Rep. 85, 97 Am. Dec. 76; Kilby Mfg. Co. v. Hinchman-Renton Co., 132 Fed. 957, 66 C. C. A. 67.

W. W. Sanders, of Elba, for appellee.

In order to bind a party by usage, it must be shown to have been known to such party or generally known. Byrd v. Beall, 150 Ala. 122, 43 South 749, 124 Am. St. Rep. 60; Cole Motor Co. v. Tebault, 196 Ala. 382, 72 South. 21; Middleton v. W. U. Tel. Co., 197 Ala. 243, 72 South. 548; Simon v. Johnson, 101 Ala. 369, 13 South. 491; Smith v. Rice, 56 Ala. 417; Stevens v. Reeves, 9 Pick. (Mass.) 198; Berkshire Woollen Mills v. Proctor, 7 Cush. (Mass.) 417. To establish usage or custom, evidence thereof must be clear and certain, and not of mere isolated instances. Desha v. Holland, 12 Ala. 513, 46 Am. Dec. 261; 27 R. C. L. 196; Cleveland v. Jenkins, 174 Ill. 398, 51 N. E. 811, 62 L. R. A. 922, 66 Am. St. Rep. 296; Foye v. Leighton, 22 N. H. 71, 53 Am. Dec. 231. A contract being plain and unambiguous, its terms and provisions are the rules of measuring the respective rights of the parties. Bryant v. Stephens, 58 Ala. 636; Elliott on Contr. 796.

GARDNER, J. The Ham Turpentine Company entered into a contract in writing with the firm of Douglas & Mizell, stipulating for the sale of products of naval stores, consisting of approximately 300 barrels of turpentine and 1,000 barrels of rosin, at Elba, Ala., between July 1, 1920, and March 31, 1921. The Ham Turpentine Company brought this suit for a breach of this contract, and from the judgment in favor of the plaintiff the defendants have prosecuted this appeal. The contract appears in the report of the case, but attention is necessarily here directed to some of its salient features.

The products were sold f. o. b. Elba, and in section 2 it was provided that:

"For turpentine in tank cars furnished by the first party [Douglas & Mizell], the second party is to be paid eight cents per gallon below the official closing market for turpentine in barrels (regulars) at Savannah, Georgia, of date of bill of lading on tank car lots."

The contract further provided that, if the Savannah Board of Trade market on the day of any delivery thereunder should be fictitious or nominal, the first official closing figures thereafter should form the price basis. The contract was based on the freight rates then existing. Section 7 was as follows:

"First party agrees to furnish tank cars within ten days after receipts of written request therefor. If tank cars are not furnished or shipped within said ten days, the price basis is to be the Savannah market of the tenth day after receipt by first party of said written request."

Section 10 reads:

"First party agrees to receive all turpentine and rosin delivered by second party hereunder and to pay cash therefor upon receipt of documents."

It was the insistence of plaintiffs that on October 14, 1920, they had on hand 90 barrels of spirits of turpentine ready for shipment, and made a written request of the defendants to furnish them a tank car in which to ship said 90 barrels, and that defendants failed or refused to furnish said tank car within the time provided by said contract to the damage of the plaintiffs. The price of the turpentine continued to advance from the date of said demand to some time in November, but from November 23, 1920, to February 14, 1921, there was no market.

There was further correspondence between the parties, and in the spring of 1921 the plaintiffs delivered to the defendants 8,093 gallons of spirits of turpentine, including the 90 barrels on hand in October, the 90 barrels measuring 4,500 gallons. The defendants offered to settle upon the basis of the Savannah market at the time of delivery. This was de-

clined by the plaintiffs upon the theory that, as to the 90 barrels on hand in October, and for which a tank car had been requested, the price basis fixed by the contract was the Savannah market of 10 days after the receipt by the defendants of said written request, to wit, October 25, 1920. Upon this contention hinges the litigation.

The defendants contended that, upon the receipt of the demand for a tank car of 90 barrels capacity, they informed the plaintiffs that so small a tank car was not available, and that the Columbia Naval Stores Company from which concern the tank cars were to be furnished under arrangements with the defendants, would not furnish such a tank car, and that the plaintiffs withdrew the request, agreeing that they would wait until a larger quantity had accumulated. This the plaintiffs denied, and this issue of fact was submitted for the jury's determination.

[1] The defendants offered to prove that the expressions in the contract concerning the shipment in tank car lots meant a shipment to the capacity of the tank, and that tank cars by usage or custom of the turpentine trade, as to capacity, had acquired a well-known and understood meaning: The minimum size being 125 and the maximum 160 barrels capacity. The court declined to permit the defendants to prove this usage or custom, and the meaning which the foregoing language had in the contract among the turpentine trade. To the ruling of the court in this respect, the defendants excepted.

We are of the opinion that in these rulings the court committed reversible error. The contract was silent as to the size or capacity of the tanks to be furnished by the defendants to the plaintiffs for the shipment of the spirits of turpentine. In Covington v. Ferguson, 204 Ala. 192, 85 South. 726, this court quoted with approval the following from the text of 35 Cyc. 639:

"If no fixed quantity of goods is contracted for, but the purchase is of a 'carload,' damages should be computed on the amount usually contained in an ordinary car."

And this principle was given application in that case. It was also recognized in Ward v. Cottonseed Products Co., 193 Ala. 101, 69 South. 514. See, also, Thompson v. Strong, 199 Ala. 23, 74 South. 34. The quotation from the foregoing authorities also sustains the view that defendants should have been permitted to show that the expression "tank cars," as used in the contract, when furnished for shipments of turpentine, meant that the tanks were to be fully, and not partially, loaded. This becomes of particular importance in the instant case, as under the provisions of the contract the defendants were to pay the freight charges.

[2] In order to show that plaintiff was without right in requesting a 90-barrel tank car the defendants offered to show the usage or custom of trade, and that the minimum size tank car in general and ordinary use was of 120-barrel capacity. In 12 Cyc. 1044, is the following general statement here applicable:

"If there is a general usage applicable to a particular profession or business, parties employing an individual in that profession are supposed to deal with him according to that usage. All trades have their usages, and when a contract is made with a man about the business of his craft, it is framed on the basis of its usage, which becomes a part of it, except when its place is occupied by particular stipulations."

This principle is well recognized in this state, and the question of the admissibility of custom or usage in aid of any ambiguity of a contract was rather fully discussed in Sampson v. Gazzam, 6 Port. 123, 30 Am. Dec. 578, where it was said:

"As courts of justice sit to expound and enforce the contracts, which parties litigant before them, have made, it is the plain dictate of natural justice, that proof, showing what the contract is, should be allowed to be made, if the evidence can be heard by the court, consistently with those rules which have been established for the ascertainment of truth."

The court further said:

"Where a custom or usage is proved to exist, in relation to a particular trade or pursuit, if it be general, all persons engaged therein, are presumed to contract in reference to such usage."

Many cases are noted in this decision illustrating the admissibility of custom and usage in aid of contracts of doubtful meaning. See, also, in this connection, Barlow v. Lambert, 28 Ala. 708, 65 Am. Dec. 374; Mobile, etc., Co. v. McMillan, 27 Ala. 77; Waring & Sons v. Grady, 49 Ala. 465, 20 Am. Rep. 286; Smith Lbr. Co. v. Jernigan, 185 Ala. 125, 64 South. 300, Ann. Cas. 1916C, 654; East Tenn. etc., R. Co. v. Johnston, 75 Ala. 596, 51 Am. Rep. 489. In this latter authority is the following language of interest in this connection:

"Where there is an express contract, parol evidence of a usage is admissible to explain terms ambiguous or doubtful in signification, or from which to infer the intention, understanding and agreement of the parties, and to incorporate a stipulation or element, wherein the contract is silent; in such case, the usage or custom becomes a part of the contract. Barlow v. Lambert, 28 Ala. 704, 65 Am. Dec. 374. 'The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, whether written or parol, which could not be done without the aid of this extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation on the theory that the parties knew of its existence, and contracted with reference to it.'"

Here the contract was silent as to the size of the tank to be furnished, and we are of the opinion the court committed error in de-

clining proof as to the custom or usage in the turpentine trade concerning the capacity of tanks in ordinary use. Such proof in no manner contradicted or varied the terms of the written contract, but was intended as an aid to the proper interpretation of the language used upon a question as to which the contract was silent.

[3] There is no merit in the insistence that this proof is inadmissible, in the absence of a showing that the plaintiffs had knowledge of such custom, as the defendants were pursuing the proper order of presentation of proof, by first attempting to show the existence of the custom. 12 Cyc. 1098. In construing a written contract, it is a well-understood rule that the situation and circumstances of the parties may be looked to when necessary to determine its meaning, and in some instances their previous negotiations shed light upon the meaning of the terms used in the contract. Chicago, etc., Ass'n v. Fine Arts Bldg., 244 Ill. 532, 91 N. E. 665, 18 Ann. Cas. 253, and authorities cited in the note, pages 257, 258, inclusive, with particular reference to Keller v. Webb, 125 Mass. 88, 28 Am. Rep. 209, and Stoops v. Smith, 100 Mass. 63, 1 Am. Rep. 85, 97 Am. Dec. 76; See, also, Miller v. Stevens, 100 Mass. 518, 1 Am. Rep. 139, 97 Am. Dec. 123; Snow v. Schomacker Mfg. Co., 69 Ala. 111, 44 Am. Rep. 509.

[4] We are of the opinion, therefore, that any previous correspondence between the parties tending to show a knowledge on the part of the plaintiffs that the defendants were only in a position to furnish tanks of the minimum capacity, 120 barrels, was admissible as shedding light upon the meaning of the language of the contract. We have not overlooked the insistence on the part of counsel for appellees that the questions of evidence here discussed were not properly reserved in the court below and sufficiently insisted upon by assignments of error and argument thereon; but upon a consideration of this insistence by the court in consultation the conclusion has been reached that this position of appellees is not well founded.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.