HAM TURPENTINE CO. et al. v. MIZELL et al. (4 Div. 250.)

(Supreme Court of Alabama. Oct. 28, 1926.)

1. Sales ⬥382—Letters tending to show that seller was holding property as his own and treating contract as breached held relevant and competent in suit for breach of contract and agreed price.

In action for breach of contract for sale of turpentine and for agreed price, letters tending to show that plaintiffs were claiming and holding 90 barrels as their property and not as property of defendants, and were treating the contract as breached, *held* relevant and competent.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. Witnesses ☞275(2) — Where letters by company with whom buyer of turpentine was doing business were shown to have been sent to seller, it was not error to cross-examine seller as to his knowledge that buyer was doing business with such company.

In action for breach of contract for sale of turpentine, providing that buyer should furnish tank cars on request, where evidence showed that letters by company to whom defendant shipped turpentine, stating they could not furnish 90-barrel tank car as requested by plaintiff, were sent to plaintiff, it was not error to permit cross-examination of plaintiff as to his knowledge that defendants were doing business with such company.

3. Witnesses ☞282½—Cross-examination of witness as to his control of money tendered by defendant to clerk of court in payment of contract held properly excluded, where already fully testified to.

In action for breach of contract, in which defendant pleaded tender, cross-examination of defendant's witness to show that money tendered had been under control of witness ever since it was paid over to clerk of court held properly excluded, where witness had already fully testified on subject.

4. Sales ☞382—Testimony as to size of tank cars customarily furnished held relevant, in action involving breach of contract to furnish cars on request.

In action for breach of contract by buyer to furnish tank cars requested by seller, where seller requested a 90-barrel tank car, testimony that it was customary to furnish 120 to 160 barrel cars held relevant.

5. Witnesses ☞37(1)—Witness reared in business of furnishing tank cars, observing factor lists and size of cars furnished, held qualified to testify as to customary size of cars furnished in the trade.

Witness, 27 years old, reared in father's business of furnishing tank cars, and testifying that his knowledge as to size of tanks in use in trade was derived from factor lists and what he had seen, held qualified to testify as to customary size of tank cars furnished during particular period.

6. Appeal and error ☞1058(1).

Under Supreme Court rule 45, error, if any, in sustaining objection to question, is without injury, where record otherwise contained evidence thereon.

7. Customs and usages ☞13, 15(1)—Parties to contract are presumed to have knowledge of custom prevailing generally in trade, and evidence thereof may be shown to explain doubtful term in contract.

In action involving breach of contract to furnish tank cars on request, charge that if custom of furnishing tank cars of particular size prevailed generally in trade, parties are presumed to have knowledge thereof, and that evidence of such custom may be shown to explain doubtful term of contract, held proper.

8. Trial ☞243.

Requested charge in action for breach of contract that trade custom is not binding on either party unless it was made part of contract, known to both parties, conflicting with oral charge on same subject, held misleading and properly refused.

9. Trial ☞145—Charge denying seller recovery for buyer's failure to furnish tank car of a certain size held properly given; complaint not alleging failure to furnish car of such size.

In action involving breach of contract by buyer to furnish tank cars on request, charge that seller cannot recover for buyer's failure to furnish tank car of 120 barrels held proper, where complaint did not claim damages for failure to furnish such a car.

10. Trial ☞251(4)—Requested charge as to buyer's refusal to furnish tank car of certain size held properly refused, where complaint did not allege failure to furnish such car.

In action involving breach of contract by buyer to furnish tank car on request, requested charge that if seller requested tank car of 120 barrels, and buyer agreed to furnish such car, but failed, seller could recover, held properly refused, where complaint did not allege failure to furnish car of such size.

11. Trial ☞260(1).

Refusal of requested charge covered by court's oral charge is not error, under Code 1923, § 9509.

12. Customs and usages ☞22—Trial ☞240, 248—Requested charge as to defendant's duty to furnish car on acceptance of plaintiff's request despite general custom of furnishing larger cars held properly refused as argumentative, misleading and abstract.

In action involving breach of contract to furnish tank cars on request, requested charge that defendant would be obligated to furnish 90-barrel car if he accepted plaintiff's request therefor, though custom of trade was to furnish 120-barrel car, held properly refused as argumentative, misleading, and in part abstract.

13. Sales ☞363.

Whether amount deposited by buyer before suit in payment under contract was sufficient to pay seller in full held for jury under conflicting evidence.

14. Appeal and error ☞1033(1).

Seller in suit on contract cannot complain that amount tendered by buyer before suit was increased by interest thereon when deposited into court; no injury being shown.

15. Sales ☞357(2).

Defendant claiming tender of amount due plaintiff under sales contract has burden of showing that amount tendered before suit was full amount due at that time.

16. Costs ☞42(6).

Defendant tendering amount due under sales contract with interest before suit was commenced, which was refused because insuffi-

cient, is not liable for costs of suit, where amount tendered is held to have been sufficient.

**17. Sales ⬅363, 387.**

Requested charges for directed verdict for plaintiff, in action for breach of contract and agreed price, *held* properly refused under conflicting evidence, whether tender by defendant was sufficient.

Appeal from Circuit Court, Covington County; W. L. Parks, Judge.

Action by the Ham Turpentine Company, a partnership, and the members thereof, against A. S. Douglas and C. W. Mizell, composing the firm of Douglas & Mizell. From a judgment for defendants, plaintiffs appeal. Affirmed.

These charges were refused to plaintiff:

(1) "A trade custom is not binding on either of the parties to a contract unless at the time the contract was entered into it is expressly made a term of the contract, or unless at the time both parties knew of such trade custom."

(3) "Although the jury may find from the evidence that there was a custom or usage of trade making the use of the term 'tank car' or 'tank car lots' mean tank cars of not less than 120 barrels, if the jury finds that the plaintiffs on the 6th of November, 1920, requested defendants to provide a tank car of 120-barrel capacity, and defendants then and there agreed to provide such a car for plaintiffs, and failed to do so within ten days thereafter, then plaintiffs would be entitled to recover of defendants the Savannah market of the 10th day after the date of such request for 120 barrels of the spirits of turpentine, if at that time plaintiffs had on hand ready for delivery that quantity of their productions or receipts for the period covered by the contract."

(4) "If the jury believe the evidence the verdict should be for the plaintiffs on the plea of tender."

(5) "If the jury believe the evidence the verdict should be for the plaintiffs."

(6) "Although you may be reasonably satisfied from the evidence that there was a general custom among the trade that the minimum capacity was 120 barrels for tank cars, yet if from the evidence you are reasonably satisfied that plaintiffs ordered or requested a 90-barrel tank car, and that defendant accepted the order or request, then the defendants would be bound by the acceptance and would be obligated to furnish such tank car."

Charge 1, given at defendants' request, is as follows:

"The court charges the jury that the plaintiff cannot recover in this case any sum based upon an alleged failure of defendant to furnish a tank car of 120-barrel size on request of plaintiffs of November 6th, if such request was made."

W. W. Sanders, of Elba, for appellants.

To constitute a good plea of tender after suit brought, the costs which have accrued must be included. 38 Cyc. 174; Warring-

ton v. Pollard, 24 Iowa, 281, 95 Am. Dec. 727; Moynahan v. Moore, 77 Am. Dec. 482; Smith v. Anders, 21 Ala. 782; Gardner v. Black, 98 Ala. 638, 12 So. 813. The plea must be unconditional and unqualified. Wilhite v. Ryan, 66 Ala. 106; Com. F. I. Co. v. Allen, 80 Ala. 571, 1 So. 202; 26 R. C. L. 640. The statute (Code 1923, § 7721) does not apply to partnership transactions, where the transaction was with the partner who is living. Ala. Gold L. I. Co. v. Sledge, 62 Ala. 566. Particular customs and usages, to be binding, must be shown to have been known by the parties at the time of contracting. 17 C. J. 458; Stoudenmire v. Harper, 81 Ala. 242, 1 So. 857; Middleton v. West. Union, 197 Ala. 243, 72 So. 548; Baker v. Lehman, 186 Ala. 493, 65 So. 321; Desha v. Holland, 12 Ala. 513, 46 Am. Dec. 261. Burden of proving facts necessary to a formal plea of tender was upon defendants. Park v. Wiley, 67 Ala. 310; Moore v. Williamson, 210 Ala. 427, 98 So. 201.

Mulkey & Mulkey, of Geneva, and E. O. Baldwin, of Andalusia, for appellees.

Tender having been made before suit, defendants were not required to include costs. Rudulph v. Wagner, 36 Ala. 698; Schuessler v. Simon, 100 Ala. 422, 14 So. 203. The court correctly charged the law as to usage and trade customs. Douglas & Mizell v. Ham Turpentine Co., 210 Ala. 180, 97 So. 650; 12 Cyc. 1044; Waring & Son v. Grady, 49 Ala. 465, 20 Am. Rep. 286. Charge 1 was correctly refused to plaintiff. Mizell v. Sylacauga Gro. Co., 214 Ala. 204, 106 So. 858. When Mizell refused to furnish a tank car upon written request, if plaintiff had the right to request a 90-barrel tank, the contract was breached, and plaintiff had the right to rescind or sue for breach. The measure of damages was the difference between the contract price and the price at time of default. Jebeles v. Crandall, 16 Ala. App. 338, 77 So. 932; Southern States Co. v. Long, 15 Ala. App. 286, 73 So. 148; Holt v. Montgomery, 212 Ala. 235, 102 So. 49; Patterson Co. v. Daniels, 205 Ala. 520, 88 So. 657.

MILLER, J. This is an action by the members of the firm of Ham Turpentine Company against the firm Douglas & Mizell for damages for breach of a contract, and for the agreed price under the contract for 8,093 gallons of turpentine, delivered by the plaintiff to defendants and upon account.

The defendants pleaded general issue, tender, and, in short, by consent general issue with leave, etc. The jury returned a verdict in favor of the defendants on the plea of tender, and from a judgment thereon against the plaintiffs this appeal is prosecuted by them.

This is the second appeal in this case. The first is reported in 210 Ala. 180, 97 So. 650,

and the contract mentioned and claimed to have been breached is set out in full in the report of that case. The part of the contract alleged to have been breached by the defendants in count 1 is section 7. This count alleges the plaintiffs in writing, on October 14, 1920, requested a "tank car" in which to ship 90 barrels of turpentine. Defendants failed or refused to furnish it within the time specified in the contract, and plaintiffs were damaged, etc., thereby. Count 2 claims damages for 8,093 gallons of turpentine delivered by plaintiffs to the defendants under the contract, which they failed to pay them. Counts 3 and 4 are for amounts due on account, etc.

The plaintiffs, in writing, October 14, 1920, requested of defendants a tank car in which to ship to them, under the contract, 90 barrels of turpentine, which they failed or refused to deliver to them.

The evidence for plaintiff tended to show that "tank cars" in general and ordinary use, mentioned in the contract, were in size from 90 to 160 barrels, and the evidence for the defendants tended to show that the tank car for 90 barrels was not delivered, because the minimum size of tank cars was 120 barrels in general and ordinary use, and it was the general custom to load all tank cars to the full shell capacity; that a tank car for 90 barrels could not be secured, and was not, for that reason, furnished on the written demand; and that 90 barrels could not be loaded in a 120-barrel tank and sold under the general and ordinary custom and trade conditions then existing.

Some time afterwards the plaintiffs delivered, under this contract, these 90 barrels of turpentine and other barrels aggregating 8,093 gallons, to the defendants. Defendants sent them a check for $3,318.13 to pay for it, when receipt on the back of the check was signed, which reads:

"Elba, Alabama, March, 1921.

"The Ham Turpentine Company hereby accepts this check for $3,318.13, in full settlement for 8,093 gallons of turpentine loaded by them in Taylor, Lowenstein & Co. tank No. 32, and acknowledge that same is in full and complete payment thereof, in accordance with contract entered into by them with Douglas & Mizell on June 26th, 1920.

"————, by Member of Firm."

The check was returned to the defendants by the plaintiffs. The evidence tended to show it was only because the plaintiffs claimed the amount thereof was insufficient. When this suit was commenced, the defendants filed a plea of tender, with which they filed in court with the clerk the said sum of $3,318.13 with interest at 8 per cent. per annum, from the date due, when the check was tendered, to date when plea was filed, making the amount deposited in court with the tender plea the sum of $3,767.91.

[1] The defendants were permitted by the court, over the objection of the plaintiffs, to read to the jury three letters, one written by Ham Turpentine Company to Taylor, Lowenstein & Co., and their letter in reply. Plaintiffs' letter stated they had 90 barrels of turpentine and a few cars of rosin, wished to know if they were in the market, and, if so, to let them know their best price. This was dated October 27, 1920. The reply stated price they would give, etc. Their letters related to the same 90 barrels of turpentine mentioned in count 1 of the complaint. They tended to show plaintiffs were claiming and holding the 90 barrels as their property, and not as the property of the defendants, and treating the contract as breached, and were suing for damages for the breach. They are relevant and competent, and the court did not err in these rulings. Brenard Mfg. Co. v. Sullivan, 210 Ala. 200, 97 So. 692.

The next letter was one written by the defendants to P. J. Ham, a plaintiff, member of the firm. It related in part to this contract, which was afterwards entered into by the parties and could in no way have injured the plaintiffs. This ruling was without error. Rule 45 of this court.

[2] Witness Ham, a plaintiff in the case, on cross-examination by defendant, was permitted by the court to ask him this question:

"Mr. Ham, you knew at the time you entered into this contract that Douglas & Mizell were doing business with the Columbia Naval Stores Company, did you?"

He answered:

"He had been shipping some rosin for defendants to the Columbia Naval Stores Company."

This was on cross-examination, and the evidence tended to show defendants shipped their turpentine and rosin to this party. Letters were already in evidence, from the Columbia Naval Stores Company to defendants, which they sent to plaintiffs, in which they state they were "unable to accept your request for a tank in which you could load from 90 to 100 barrels," and they had "no tank under 120 barrels," and "we cannot furnish tank unless you are in position to load same to capacity." So we must hold the court did not err in this ruling.

C. W. Mizell, a defendant, was examined, and on cross-examination by plaintiff testified in regard to the check for $3,318.13, which was sent to the plaintiff and was returned, and witness, on further cross-examination, testified:

"That is the way in which I attempted to convey to the plaintiff the funds that I subsequently paid into court. That is the way we made all settlements—was by check—and that is the way I attempted to do this."

Witness was asked if he had had control of this money ever since he brought it in court, and he said:

"No, sir; I haven't had control of it."

Witness was asked if it was not a fact that, at the time he brought the money into court, it was stipulated with the clerk that it be deposited in the First National Bank of Opp, and he answered:

"No, I couldn't have done that, because I didn't have anything to do with acting as clerk, and I couldn't say whether it was deposited there in my bank or not. So far as I know, it is."

And on defendant's objection to the question to the witness to show that the money which was brought into court and was deposited in the First National Bank of Opp, of which the witness is president, plaintiff made known that he proposed to show that the money in question had been under the control of the witness ever since it was surrendered or paid over to the clerk, and the court sustained the objection of the defendant, and declined to permit the plaintiff to make that proof, and to that ruling plaintiff reserved an exception.

[3] The plaintiff cannot complain at this ruling of the court. This witness, on this cross-examination, had fully answered the questions as to his or the clerk's control of the money tendered into court, and this was simply an attempt to interrogate him again on the same subject.

[4] A. C. Darling, witness for the defendants, testified:

"The customary size cars, minimum capacity, during that period (prior to March, 1921), is 120 to 160 barrels. That was the size tanks in customary use."

[5] The plaintiff moved to exclude the testimony of this witness, as to the size of the tanks used by the factors. The court overruled the motion, and in this we find no error. He was qualified to testify, and his testimony was relevant to the issue under count 1. This witness was 27 years old. His father was in this business. He had been reared in it, by his father, and worked in it practically all of his life and was competent to testify. He stated:

"All that I know about the size tanks in use in the trade is what I have seen and from what we have sold, and from the factor lists. Each factor lists his tank, and I am testifying from what the lists show and from what I have seen, and that is all I know about it."

[6] Plaintiffs insist that the court erred in sustaining defendant's objection to the following question by plaintiffs' counsel, to the witness P. J. Ham:

"Was anything said then and there about what Mr. Douglas had advised you about his ability or inability to obtain the tank which you had previously ordered?"

This Douglas was a deceased member of the defendant's firm. If in this the court erred, which we do not intend to even intimate, it was clearly without injury, for the record is abounding in evidence, written and oral, by the defendants, that they tried but could not secure a 90-barrel tank, as such tanks were not in general use. Rule 45 of this court.

[7] The defendants excepted to the following part of the oral charge:

"Now, as regards knowledge: It is not necessary that the plaintiff and the defendant should know of that custom; if they were in that business, and had been in that business for some time, and that custom was general, and that it prevailed everywhere pertaining to this trade and this business, and it was one of long standing, the law will presume their knowledge of it, and will charge them with constructive knowledge of it."

In this connection, the court also stated to the jury:

"But if it was only a local custom, then it would be necessary that each of the parties shall have knowledge of that custom and usage, but the defendants do not insist or contend that it was local, but they say that it was more than local, that it prevailed here, and that it prevailed everywhere else that the turpentine business was carried on and was shipped, and they say those were the sort of cars that were used, and so on. Now, whenever that is the case, and where there is a custom of that kind, and there is an indefinite and a doubtful term used in the contract, evidence of that custom may be introduced for the purpose of showing the meaning of the parties and for supplying the meaning of the parties, and the purpose of the parties, and even to the extent of supplying an element of the contract, because it becomes an element of the contract—that custom does."

[8] That part of the oral charge of court, excepted to by the defendants, is free from error, when considered as it should be in connection with the entire charge of the court. And written charge No. 1, requested by plaintiffs and refused by the court, is in conflict with the oral charge of the court on this subject, and it was calculated to mislead the jury, and the court did not err in refusing it. The oral charge and the refusal of this written charge is in accord with the opinion of this court in this case on former appeal, 210 Ala. 180, headnotes 2 and 3, 97 So. 650; Waring v. Grady, 49 Ala. 465, 20 Am. Rep. 286.

[9, 10] The court did not err in giving written charge No. 1, requested by the defendants, and in refusing written charge No. 3, asked by plaintiffs. There was no count in the complaint claiming damages for breach of the contract for failing to furnish a 120-barrel tank for turpentine, on request of plaintiffs, dated November 6th.

[11] The same rule of law contained in written charge No. 2, requested by plaintiffs and refused by the court, was fairly and substantially covered by the clear and compre-

hensive oral charge of the court. Section 9509 of the Code of 1923.

Written charge 6, requested by the plaintiffs, was properly refused by the court, as it is argumentative, misleading, and in part abstract.

[13-16] The evidence is in clear conflict on the issues under the plea of tender and under count 1 of the complaint. Whether the amount ($3,318.13) tendered by the defendants to plaintiffs, before the suit was commenced, and deposited in court afterwards, was sufficient in amount to pay the plaintiff in full at the time of the tender, was for the jury to decide under the conflicting tendency of the evidence. The plaintiff cannot justly complain that the amount tendered before suit was filed was increased by the interest thereon, when deposited into court. This helped and did not injure plaintiffs. The burden was on the defendant to show under his tender plea issue that the $3,318.13 tendered before the suit was commenced was the amount in full due them at that time. This amount, with interest thereon, was deposited in court with a tender plea. If this tender had been first made after commencement of the suit, then the tender plea should include cost to that time; but it was made first before suit was commenced, and there This amount, with interest thereon, was deposited in court with a tender plea. If this tender had been first made after commencement of the suit, then the tender plea should include cost to that time; but it was made first before suit was commenced, and there was evidence tending to show that it was then refused because the amount was insufficient. See Rudulph v. Wagner, 36 Ala. 698, headnote 3; Schuessler v. Simon, 100 Ala. 422, 14 So. 203.

[17] It results that the court properly refused written charges 4 and 5 requested by the plaintiffs. McMillan v. Aiken, 205 Ala. 35, headnotes 9–11, 88 So. 135.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.